**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HANANIA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIC HOLDER, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-11-0608 EMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**(Docket No. 18)** |

Plaintiff Jason Hanania has filed suit against Defendants Eric Holder, in his official capacity as the United States Attorney General, and Glenn Fine, in his official capacity as the United States Inspector General, asserting, *inter alia*, that the whistleblowing scheme codified at 5 U.S.C. § 2303 and 28 C.F.R. § 27 is unconstitutional and that his procedural and substantive due process rights were violated. Currently pending before the Court is the federal government's motion to dismiss. Having considered the parties' briefs and accompanying submissions, as well as their oral argument and all other evidence of record, the Court hereby **GRANTS** the motion to dismiss.

## I.    FACTUAL & PROCEDURAL BACKGROUND

In his complaint, Mr. Hanania alleges as follows.

In 2004, the Federal Bureau of Investigation ("FBI") hired Mr. Hanania as an intelligence analyst. Subsequently, the FBI recruited Mr. Hanania to become and he eventually became an agent for the FBI. *See* Compl. ¶¶ 13, 19. In October 2005, Mr. Hanania completed his new agent training and was randomly assigned to a drug investigations squad. *See id.* ¶ 19.

During his first four months on the squad, Mr. Hanania saw his squad supervisor only four times and his squad had no meetings. In 2006, Mr. Hanania told a senior agent that the squad supervisor was not showing up for work; he also told the senior agent that he did not know what he was supposed to be doing. Mr. Hanania asked the senior agent to arrange for a meeting with him, the senior agent, and the highest ranking agent in Mr. Hanania's field office. *See id.* ¶ 20.

Several days later, that meeting took place. During that meeting, Mr. Hanania asked to be reassigned to an intelligence position instead of remaining on the drug investigations squad. Mr. Hanania was told that he would not be reassigned but that he would be transferred back to the intelligence analyst position in his previous field office. *See id.* ¶ 21.

Four weeks later, Mr. Hanania was called into a surprise meeting. There, he was told that he would be subjected to a disciplinary hearing and a criminal investigation for time and attendance fraud if he did not resign immediately. Mr. Hanania was given a resignation letter to sign and was told that he would be rehired if he reapplied for a FBI intelligence analyst position. Mr. Hanania thus signed the letter. *See id.* ¶ 22.

To protect himself and his family, Mr. Hanania initially told no one what had happened and reapplied for the intelligence analyst position. *See id.* Some three years later, his application for an intelligence analyst position was still pending. *See id.* ¶ 24.

Thereafter, in March 2009, Mr. Hanania filed a "Reprisal Complaint Notice" with the Department of Justice's Office of Inspector General ("OIG") and the FBI's Office of Professional Responsibility ("OPR"). There, he

> detailed major concerns involving the reluctance of retirement-minded FBI investigative supervisors to adapt from a pre-9/11 investigative mission to a post-9/11 intelligence mission, and how this led to [his] forced resignation [in 2006]. Specifically, [Mr. Hanania] described: (a) mismanagement of intelligence analyst and agent recruiting, training, and assignment processes; (b) misrepresentations by FBI executive officials regarding the FBI's intelligence capabilities; and (c) conflicts between pre-9/11 investigative policies and operations and post-9/11 intelligence policies and operations.

*Id.* In April 2009, the OIG informed Mr. Hanania that no investigation would be provided. *See id.*

Several months later, in September 2009, Mr. Hanania was told that he would not be rehired as an intelligence analyst. *See id.* ¶ 25.

2

1   According to Mr. Hanania, the above allegations reflect that he made disclosures about
2  mismanagement, a gross waste of funds, and/or a substantial and specific danger to public health or
3  safety to appropriate officials within the FBI and that, as a result, he suffered retaliation (including
4  but not limited to his forced resignation) in violation of 5 U.S.C. § 2303.  The text of § 2303 is as
5  follows:

6   (a)   Any employee of the Federal Bureau of Investigation who has authority to take, direct others to take, recommend, or approve
7  any personnel action, shall not, with respect to such authority, take or fail to take a personnel action with respect to any
8  employee of the Bureau as a reprisal for a disclosure of information by the employee to the Attorney General (or an
9  employee designated by the Attorney General for such purpose) which the employee or applicant reasonably believes
10  evidences –

11   (1)   a violation of any law, rule, or regulation, or

12   (2)   mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public
13  health or safety.

14  . . . .

15   (b)   The Attorney General shall prescribe regulations to ensure that such a personnel action shall not be taken against an employee
16  of the Bureau as a reprisal for any disclosure of information described in subsection (a) of this section.

17   (c)   The President shall provide for the enforcement of this section
18  in a manner consistent with applicable provisions of sections 1214 and 1221 of this title [5 U.S.C. §§ 1214 and 1221].

19

20  5 U.S.C. § 2303.

21   In this action, however, Mr. Hanania, has not brought a claim for violation of § 2303.
22  Rather, in this action, Mr. Hanania is challenging the constitutionality of § 2303, largely on the
23  ground that it does not provide for adequate checks and balances between the three branches of
24  government.  More specifically, Mr. Hanania contends that § 2303(b) violates Article I of the federal
25  Constitution because, by allowing the Attorney General to prescribe regulations, Congress
26  impermissibly delegated its legislative authority to the executive branch.  *See* Compl. ¶¶ 38-40.  In
27  addition, Mr. Hanania asserts that § 2303 and its implementing regulations, *see* 28 C.F.R. part 27,
28  violate Article III of the federal Constitution because they permit the Department of Justice ("DOJ")

to investigate the misconduct of the FBI, which is one of its own agencies – *i.e.*, the accused party is also the adjudicator.

In addition to the above, Mr. Hanania contends that his due process rights have been violated. More specifically, he claims that his procedural due process rights were violated because, *e.g.*, (1) he was forced to resign without first having a hearing; (2) the administrative process set forth in § 2303 and its implementing regulations delegates legislative, investigative, and adjudicative functions to the accused party; and (3) under § 2303 and its implementing regulations, there is no review of an administrative decision not to investigate. As for the substantive due process claim, there, Mr. Hanania basically asserts that § 2303 and its implementing regulations provide no effective whistleblower protection, which is the first line of defense against government mismanagement.

## II. DISCUSSION

In its motion to dismiss, the federal government makes three arguments. First, it contends that the complaint should be dismissed in its entirety based on res judicata. Second, the government asserts that the claims are all barred based on a failure to exhaust administrative remedies. Finally, the government argues that each of the claims should be dismissed for failure to state a claim for relief. Because the Court agrees that the case should be dismissed based on res judicata, it does not address the latter arguments raised by the government.

A. Prior Lawsuit

In general, "[r]es judicata, or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (emphasis omitted). In the instant case, the government contends that the claims raised in this lawsuit are barred because they were raised or could have been raised in a prior lawsuit that Mr. Hanania brought in the District of Arizona. A copy of the pleading that Mr. Hanania filed in the Arizona lawsuit has been attached to the government's motion as Exhibit 1.

That pleading reflects that Mr. Hanania filed with the Arizona court a petition for a writ of mandamus, naming the Office of the President of the United States as the respondent. In the

4

petition, Mr. Hanania criticized the FBI, in particular its "middle management," for failing to adapt from an investigations model to an intelligence model in the wake of September 11, 2001.[1]

Furthermore, in the petition, Mr. Hanania claimed that he had engaged in whistleblowing activity and that he was retaliated against as a result. These allegations mirror the allegations in the current action. For example, Mr. Hanania made allegations about the failure of his drug squad supervisor to show up to work, *see id.* (Ariz. Pet. at 9-10); about the meeting where he asked to be reassigned to an intelligence position, *see id.* (Ariz. Pet. at 12); about the meeting where he was "ambushed" and forced to resign upon threat of a disciplinary action and criminal investigation, *see id.* (Ariz. Pet. at 13); about the Reprisal Complaint Notice that he submitted in March 2009 to the OIG and OPR, *see id.* (Ariz. Pet. at 14); about OIG's refusal to investigate, *see id.* (Ariz. Pet. at 15); and about the FBI's subsequent decision to reject him for a position as an intelligence analyst. *See id.*

In terms of relief, Mr. Hanania asked the Arizona court to "mandate the Office of the President to properly enforce [§ 2303]," *id.* (Ariz. Pet. at 23), in particular, by enabling an investigation by the Office of Special Counsel ("OSC") into issues such as (1) whether the FBI has negligently managed national security intelligence resources; (2) whether Mr. Hanania's Special Agent in Charge ("SAC") and Assistant Special Agent in Charge ("ASAC") acted reasonably in assigning him to a drug investigations squad rather than an intelligence position, in refusing to reassign him to an intelligence position, and in forcing his resignation upon threat of a criminal investigation; (3) whether Mr. Hanania's ASAC should be held criminally liable for compelling his resignation under threat of a criminal investigation, also in violation of Mr. Hanania's due process rights; and (4) whether the FBI should have both investigative and intelligence missions. *See id.* (Ariz. Pet. at 23-25).

---

[1] For example, Mr. Hanania maintained that the new agent training was outdated because trainees received only one day of instruction (out of forty) on intelligence. *See* Ex. 1 (Ariz. Pet. at 7). Also, Mr. Hanania asserted that, after he completed his training, the Special Agent in Charge ("SAC") of the FBI field office where he was assigned placed him on a drug investigations squad without taking into consideration his experience which was more fitted for intelligence. *See id.* (Ariz. Pet. at 8). According to Mr. Hanania, FBI supervisors have personal incentives and financial incentives to work drug and other investigations rather than intelligence. *See id.* (Ariz. Pet. at 9).

5

1    Mr. Hanania's petition for a writ of mandamus was resolved in November 2010, when the
2 Arizona district court granted the motion to dismiss filed by the Executive Office of the President
3 ("EOP"). *See* Mot., Ex. 2 (order and opinion). The court rejected the EOP's argument that the
4 petition was barred by sovereign immunity; however, it ultimately agreed with the EOP that Mr.
5 Hanania had failed to state a claim for mandamus relief. *See id.* (Order at 6-7). In particular, the
6 court concluded that "Mr. Hanania's claim is not clear and certain because the allegedly unlawful
7 delegation of presidential authority [to the Attorney General for enforcement of § 2303] is permitted
8 by statute [*i.e.*, § 2303(c)]" and "the official duty sought to be enforced is neither ministerial nor
9 plainly prescribed." *Id.*

B.   Elements of Res Judicata

As stated above, the government's position is that the Arizona lawsuit precludes litigation of the claims Mr. Hanania raises here. To determine the preclusive effect of the Arizona lawsuit – a federal lawsuit – the Court must look to federal law. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 n.10 (9th Cir. 2003) (noting that "'[t]he res judicata effect of federal court judgments is a matter of federal law'"). Under federal law, "[r]es judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011).

1.   Identity of Claims

As the Ninth Circuit has stated, "[i]dentity of claims exists when two suits arise from the same transactional nucleus of facts."[2] *Tahoe-Sierra*, 322 F.3d at 1078 (internal quotation marks omitted). "'Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.'" *International Union of Operating Engineers-Employers Constr. Industry Pension, Welfare & Training Trust Funds v. Karr*, 994 F.2d 1426, 1429 (9th Cir. 1993). "Newly articulated claims

---

[2] Mr. Hanania argues that res judicata applies only where the issues are the same. In support of this statement, he cites *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391 (9th Cir. 1992). Mr. Hanania, however, has taken the quotation from *Fund for Animals* out of context. *Fund for Animals* makes clear that res judicata is about claim preclusion, and not issue preclusion. Issue preclusion is covered by collateral estoppel.

1 based on the same nucleus of facts may still be subject to a res judicata finding if the claims could
2 have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078.

3   Here, the Court finds that the Arizona lawsuit and the current lawsuit are related to the same
4 transactional nucleus of facts. In both lawsuits, there is a core set of allegations related to Mr.
5 Hanania's employment with the FBI, from the time he began as intelligence analyst to the brief
6 period where he was an agent, and from his resignation from the agency, purportedly under threat of
7 disciplinary action and a criminal investigation, to his submission of a Reprisal Complaint Notice
8 and the eventual rejection of his submission as well as his application to be rehired as an intelligence
9 analyst. And given that both lawsuits involve the same core facts, the two actions could have been
10 conveniently tried together.

11   That the Arizona lawsuit sought different relief from the lawsuit here does not gainsay the
12 application of res judicata because both suits evolve from the same nucleus of facts. As the court
13 noted in *Taylor v. Grannis*, No. C 07-6380 MHP (pr), 2010 U.S. Dist. LEXIS 121103, at *12 (N.D.
14 Cal. Oct. 29, 2010), "[r]es judicata precludes piecemeal litigation by splitting a single cause of
15 action or relitigation of the same cause of action on a different legal theory *or for different relief*."
16 (Emphasis added.) To the extent the Arizona lawsuit sought inconsistent relief from the lawsuit here
17 – *i.e.*, the former sought "proper" enforcement of § 2303 whereas the latter seeks, *inter alia*, a
18 declaration of its unconstitutionality – that does not mean that the latter claim could not have been
19 brought in the first suit. Alternative legal theories or requests for relief are permitted. *See C.B. v.*
20 *Sonora Sch. Dist.*, 691 F. Supp. 2d 1123, 1154 (E.D. Cal. 2009) (noting that Federal Rule of Civil
21 Procedure 8(a) allows for alternative or different types of relief, and Rule 8(d) for alternative or
22 inconsistent claims for relief); *cf. Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1142 (9th
23 Cir. 1990) (noting that "a prudent lawyer [might] assert more than one legal theory as the basis for
24 relief and would make alternative or inconsistent allegations (intentional acts and negligence, for
25 example) to support the different theories"). As noted above, "[n]ewly articulated claims based on
26 the same nucleus of facts may still be subject to a res judicata finding if the claims *could have been*
27 *brought* in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078 (emphasis added).

28

### 2. Final Judgment on the Merits

The Arizona lawsuit clearly reached a final judgment on the merits. The Arizona court dismissed the action under Rule 12(b)(6) for failure to state a claim for relief. *See* Mot., Ex. 2 (Order at 8). Under Ninth Circuit and Supreme Court precedent, "a dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to which res judicata applies." *Stewart v. United States Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002) (citing *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 399 n.3 (1981)). The Arizona court's judgment became final when Mr. Hanania failed to appeal the decision granting the motion to dismiss. *See Fuson v. Astrue*, No. C 09-00754 RS, 2010 U.S. Dist. LEXIS 102295, at *7 (N.D. Cal. Sept. 28, 2010) (noting that "[p]laintiff did not appeal this decision, which rendered the district court's finding a final judgment on the merits").

### 3. Privity

Finally, the Arizona lawsuit and the current lawsuit involve the same parties or at least their privies. Mr. Hanania is undisputedly the complainant in both actions. Furthermore, in both actions, Mr. Hanania has named the federal government as the opposing party. The fact that Mr. Hanania sued the Office of the President of the United States in the Arizona lawsuit and sued Mr. Holder and Mr. Fine in the current lawsuit does not bar application of res judicata. Both amount to suits against the United States. (Mr. Holder and Mr. Fine were sued in their official capacities, and therefore the suit against them must be construed as a suit against the United States. *See Community House, Inc. v. City of Boise*, 623 F.3d 945, 966 (9th Cir. 2010) (noting that "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks omitted).)

To the extent Mr. Hanania suggests that res judicata cannot apply where the defendants in the lawsuits are different entities within the federal government, he is incorrect. As the government contends, *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391 (9th Cir. 1992), disposes of that argument. In *Fund for Animals*, the plaintiff sued, *inter alia*, two federal government officials in their official capacities, namely, the Secretary of the United States Department of the Interior and the Secretary of the United States Department of Agriculture. In a prior lawsuit, the plaintiff had sued the Secretary of the Interior, the Director of the National Park Service, and the Superintendent of Yellowstone, all

in their official capacities. *See id.* at 1398. The Ninth Circuit noted: "Although the two actions name different federal defendants, 'there is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government.'" *Id.*

4. <u>Summary</u>

Because each of the elements of res judicata has been satisfied, the Court concludes that the claims asserted in the current action are barred.

Mr. Hanania's remaining arguments to the contrary are without merit. For example, Mr. Hanania argues that res judicata is not applicable because it bars only claims based on the same causes of action but, in the Arizona lawsuit, the court concluded that he had failed to state any claim for relief: "In other words, zero claims were filed in the 2010 Petition and five claims were filed in the present Complaint." Opp'n at 5. This is incorrect. The Arizona court did not find that no claims had been made in the mandamus petition. Rather, the court simply determined that the claims that were made were not legally sufficient. *See* Mot., Ex. 2 (Order at 2).

Mr. Hanania also argues that, at the very least, res judicata cannot be a bar to his procedural and substantive due process claims because they "arose from the 2010 legal proceeding [*i.e.*, the Arizona lawsuit] and would not exist but for the 2010 legal proceeding." Opp'n at 6. This too is incorrect. In the procedural due process claim, Mr. Hanania contends that his rights were violated because he was forced to resign without having a hearing. That event took place in 2006. Mr. Hanania also asserts a violation of procedural due process because he was not able to obtain review of the OIG's decision not to investigate. The OIG's decision was made in 2009. In addition to the above, Mr. Hanania asserts a procedural due process claim, as well as a substantive due process claim, on the ground that § 2303 and its implementing regulations essentially fail to provide effective whistleblower protection. Contrary to what Mr. Hanania argues, this claim did not *arise* from the Arizona lawsuit; rather, it was a *part* of the claims adjudicated in that lawsuit. *See* Mot., Ex. 1 (Ariz. Pet. at 24) (arguing that, when the ASAC forced him to resign, that deprived him of his due process rights). Finally, to the extent Mr. Hanania argues a violation of due process based on the FBI's alleged attempt to interfere in the Arizona lawsuit (by demanding that purportedly

9

classified information be destroyed), that is conduct that pre-dates the judgment of the Arizona court and was encompassed in those proceedings. Therefore, that claim is also subject to preclusion.[3] The Court emphasizes that it is irrelevant that the due process claims were not formally asserted in the Arizona lawsuit. As stated above, "[n]ewly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action." *Tahoe-Sierra*, 322 F.3d at 1078

### III. CONCLUSION

Because res judicata is a bar to the current suit, the federal government's motion to dismiss is granted. The Clerk of the Court is directed to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket No. 18.

IT IS SO ORDERED.

Dated: September 12, 2011

EDWARD M. CHEN
United States District Judge

---

[3] In addition, Mr. Hanania's claim that the "physical presence of the FBI inside the Arizona Federal Court may have unduly influenced judicial employees and the decision to dismiss the 2010 [mandamus] [p]etition," Opp'n at 7, is entirely speculative and would not survive scrutiny under *Iqbal* and *Twombly*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (requiring that a claim be facially plausible to withstand a Rule 12(b)(6) motion; explaining that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

As for Mr. Hanania's contention that the FBI's actions in the Arizona lawsuit led him to divert his efforts "from the civil petitioning process to the minimization of any FBI manufactured criminal liability," *id.*, he has failed to explain why this should be a bar to application of res judicata. Mr. Hanania has not shown, *e.g.*, that had he not been so diverted, the Arizona court would have reached a different conclusion on the Rule 12(b)(6) motion, where it held that "Mr. Hanania's claim is not clear and certain because the allegedly unlawful delegation of presidential authority [to the Attorney General for enforcement of § 2303] is permitted by statute [*i.e.*, § 2303(c)]" and "the official duty sought to be enforced is neither ministerial nor plainly prescribed." Mot., Ex. 2 (Order at 6-7).